

**SIGNED this 23rd day of January, 2013.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 12-60651-CAG |
| | § | |
| JUNIOR V. LEVERETT and | § | |
| ROSE DOUTHIT LEVERETT, | § | |
| | § | CHAPTER 13 |
| Debtors. | § | |

**MEMORANDUM OPINION AND ORDER DENYING TRUSTEE'S MOTION TO
REVOKE ORDER CONFIRMING DEBTORS' CHAPTER 13 PLAN**

Came on to be considered the above-numbered bankruptcy proceeding and, in particular, the Chapter 13 Trustee's Motion to Revoke Order Confirming Debtor's Chapter 13 Plan (ECF No. 29). The Court held a hearing on this matter on December 18, 2012, and took the matter under advisement. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(L). This matter has been referred to the Bankruptcy Court under the District Court's Standing Order of Reference. This Memorandum Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052. For reasons stated in this Memorandum Opinion, the Court is of the opinion that the Trustee's Motion should be DENIED.

1

#### FACTUAL AND PROCEDURAL BACKGROUND

In February of 2012, Rose Leverett—one of the Debtors in this case—was indicted in Bosque County for alleged theft of an amount between $20,000 and $100,000. The charges stem from Mrs. Leverett's alleged theft of money from a local group known as the West Shore Civic Association.[1] On June 12, 2012, while the criminal case was pending, Mrs. Leverett and her husband (the "Debtors") filed bankruptcy under Chapter 13 and submitted their required schedules and statements (ECF No. 1). According to testimony provided by both Mrs. Leverett and her criminal defense counsel, Debtors filed bankruptcy without defense counsel's knowledge. Similarly, Debtors did not disclose to their bankruptcy counsel that Mrs. Leverett was facing criminal charges. The Court confirmed Debtors' Chapter 13 Plan on October 24, 2012 (ECF No. 26). It was only after confirmation that the Trustee learned of Mrs. Leverett's pending criminal case, when the District Attorney's office called the Trustee after learning of the bankruptcy case. The District Attorney was apparently concerned that Debtors were secretly selling off assets in order to acquire enough money for a plea bargain.[2] Shortly thereafter, the Trustee filed this Motion to Revoke Order Confirming Debtor's Chapter 13 Plan (ECF No. 29), and asked the Court to revoke Debtor's Confirmation Order because the Order was allegedly procured by fraud.

#### PARTIES' CONTENTIONS

The Trustee claims Debtors fraudulently concealed critical facts during the confirmation process, and that the Court would not have confirmed Debtors' Plan had it known the concealed

---

[1] As of the date of this ruling, the Court is not aware of a verdict in this case. The Court, however, is of the opinion that the verdict in the criminal case is irrelevant because courts must determine confirmation based on information as it exists at the time of confirmation.

[2] In fact, the Trustee filed a Motion to Expedite the hearing on this matter and subpoenaed several witnesses in order to gather and present evidence they believed would show Debtors were illicitly selling assets to pay Bosque County in an alleged plea agreement. A review of the evidence supplied during the hearing, as well as testimony from the subpoenaed witnesses, rebutted the Trustee's theory.

2

facts. Most of these alleged concealments stem from Mrs. Leverett's pending criminal case, of which the Trustee's office had no knowledge until after plan confirmation. According to Trustee, Debtors should have disclosed the pending criminal indictment and their employment of defense counsel, neither of which were on Debtors' schedules and statements. Specifically, Trustee alleges the following omissions on Debtors' schedules and statements allowed them to obtain confirmation by fraud: (1) payments to defense counsel, (2) a claim for restitution in the criminal case, (3) a failure to list the potential restitution claim on Schedule J, (4) a $10,000 bond claim owed by Debtors to Farmers Insurance, (5) a claim for $500 owed to Mrs. Leverett's defense counsel, (6) an allegedly undisclosed executory contract with Mrs. Leverett's defense counsel, (7) a failure to disclose the pending criminal case itself, and (8) an alleged sale of a boat to Mrs. Leverett's stepdaughter in January of 2012. Debtors respond that some of these alleged "failures" stem from disclosures that that were not required under the Code, and that others stemmed from inadvertent errors, not by fraud. Debtors argue that, under any circumstance, none of the undisclosed information would have any effect on confirmation, and that as a result the Trustee has not proven a critical element of its case for fraud.

## DISCUSSION

The Bankruptcy Code allows courts to revoke an order of confirmation of a Chapter 13 plan if, after notice and a hearing, the court determines that the order was procured by fraud. 11 U.S.C. § 1330 (West 2012). This is a higher standard than the one trustees and objecting parties face at the plan confirmation stage, which allows courts to deny confirmation if a debtor cannot show that the plan is filed in good faith. *See* 11 U.S.C. § 1325(a)(3). When considering the requirements a debtor must meet to have a Chapter 13 plan confirmed, revocation of that plan after the fact is an extraordinary remedy. A motion to revoke confirmation, therefore, is not

3

simply an opportunity to relitigate issues that were or should have been addressed at confirmation; rather, a party must prove (1) that the debtor made a statement that was materially false; (2) that the representation was either known by the debtor to be false, or was made without belief in its truth, or was made with reckless disregard to the truth; (3) that the representation was made to induce the court to rely upon it; (4) that the court did rely upon it; and (5) that as a consequence of such reliance, the court entered confirmation. *In re Nikoloutsos,* 199 F.3d 233, 238 (5th Cir. 2000) (citing *In re Edwards,* 67 B.R. 1008, 1009-10 (Bankr. D. Conn. 1986)).

In *Nikoloutsos*, the Fifth Circuit considered whether a debtor procured confirmation through fraud by failing to schedule a judgment of over $800,000, even after the judgment was "unmistakably final." *Id.* The judgment stemmed from a from a personal injury lawsuit in which Mr. Nikoloutsos was found liable for a "malicious assault" against his former spouse. *Id.* at 233. On his schedules, however, Mr. Nikoloutsos stated that he owed nothing to his former spouse. *Id.* at 238. The Fifth Circuit noted that the bankruptcy case itself stemmed from an attempt to avoid paying any of the judgment against him, and that therefore he clearly concealed the judgment against him in order to induce the bankruptcy court to confirm his plan. *Id.* Further, had Nikoloutsos reported the debt, it would have made him ineligible for Chapter 13. *Id.* (citing 11 U.S.C. § 109(e), which states debtors are only eligible for Chapter 13 if they have noncontingent, liquidated debts of less than $360,475).[3] On those facts, the Fifth Circuit held that Mr. Nikoloutsos obtained confirmation by fraud. 199 F.3d at 238.

The Bankruptcy Court for the Eastern District of Texas revoked confirmation in a case where the debtor misrepresented the nature of debts in order to avoid paying her creditors in her Chapter 13 case. *In re Davis,* 2011 WL 1302222 (Bankr. E.D. Tex. Mar. 31, 2011). In *Davis*,

---

[3] At the time of the *Nikoloutsos* opinion, the maximum amount of allowed debt to retain Chapter 13 eligibility was $250,000. *In re Thomas,* 223 Fed. Appx. 310, 314 (5th Cir. 2007) (citing *Nikoloutsos*).

4

the Court noted that, based the on debtor's schedules and statements, she filed bankruptcy "solely for the purpose of addressing her credit card debts." *Id.* Her Chapter 13 plan as proposed would pay all of her unsecured creditors in full. *Id.* The debtor's conduct throughout the course of the bankruptcy case, however, indicated that she intended to pay as few creditors as possible by filing boilerplate, procedural objections to their claims. *Id.* The court concluded that, had it known at the time of confirmation that she would be objecting to every single claim on what the court considered to be frivolous grounds, especially considering the fact that the debtor was an affluent individual making a six-figure salary, the court would not have confirmed her plan. *Id.* The court found these grounds sufficient to revoke the debtor's confirmation order. *Id.*

In the Southern District of Texas, a bankruptcy court revoked confirmation after discovering that the debtors intentionally misrepresented their tax liability. **In re Thomas,** 337 B.R. 879 (S.D. Tex. Feb. 13, 2006, *aff'd* **In re Thomas,** 223 Fed. Appx. 310, 314 (5th Cir. 2007)). The Court noted that the amount of tax liability disclosed was far below what the IRS actually claimed, and that the number the debtors chose to disclose was "arbitrary" with "no basis in fact or in law." 337 B.R. at 883. Debtor's counsel throughout the case continued to provide arbitrary numbers that were at best inaccurate, leading the bankruptcy court to determine that both the debtors and their counsel knew that their plan, which included misrepresentations as to their tax liability, did not meet the requirements of Chapter 13. *Id.* at 887. According to the Court, counsel manipulated the figures on the debtors' schedule and their plan in order to comply the Chapter 13 requirements, and that had the court known the real amount of liability the plan would not have been confirmed. *Id.* Indeed, the debtors' counsel admitted outright that he "was trying to obviously get jurisdiction over [the IRS] to make sure something did not survive the Chapter 13 discharge." *Id.* On that basis, the court revoked confirmation. *Id.* at 894.

5

A case in another jurisdiction interpreting *Nikoloutsos* highlighted the need for a requisite mental state in order to prove fraud. **In re Randolph**, 273 B.R. 914 (M.D. Fla. Jan. 23, 2002) (ruling that the plaintiff did not meet its burden in proving that debtors intended to fraudulently obtain confirmation of their plan). The court in *Randolph* noted that the plaintiff offered only two pieces of evidence to prove mental state: (1) the experience of the debtor's counsel in bankruptcy matters, and (2) that plaintiff objected to its treatment under the plan. *Id.* at 919. The court, taking into account that the plaintiff never tied either piece of evidence to exactly how either piece of evidence showed intent of the debtor to fraudulently obtain confirmation, did not revoke the debtor's plan. *Id.* It is with these principles that the Court examines Trustee's Motion to Revoke Order of Confirmation.

A.   Pending Criminal Case

The Trustee argues Mrs. Leverett's pending criminal case, and its possible implications, should have been disclosed or scheduled prior to plan confirmation. Specifically, the Trustee claims Debtors should have disclosed (1) the criminal indictment itself, (2) potential restitution as a claim on Schedule F (Creditors Holding Unsecured Nonpriority Claims), and (3) a potential restitution claim on Schedule J (Current Expenditures of Debtors) as a projected expense. When Debtors filed bankruptcy, Mrs. Leverett was under indictment for alleged theft. At the time of filing, there had been no adjudication of her guilt, and no verdict entered that would have affected her financial status. No claim for restitution existed at the time of confirmation. This case is therefore distinguishable from *Nikoloutsos*, in which the debtor failed to disclose a final judgment against him.

The Court also finds that the pending criminal case is not a contingent claim that should have been scheduled on Debtors' Schedule F. Though not defined by the Bankruptcy Code, the

6

Fifth Circuit has defined a claim as contingent if the debt "is one which will be called upon to pay only upon the occurrence or happening of an extrinsic event that will trigger the liability of the debtor to the alleged creditor." *In re Ford,* 967 F.2d 1047, 1051 (5th Cir. 1992 (quoting *In re All Media Properties*, 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980)) (emphasis removed). Notably, to be a contingent claim, the claim must also have been "reasonably contemplated by the debtor and creditor *at the time the event giving rise to the claim occurred.*" **Ford,** 967 F.2d at 1051 (emphasis added). The Court cannot reasonably conclude that, at the time Mrs. Leverett allegedly stole money, Bosque County was reasonably contemplating a potential claim against Mrs. Leverett for the alleged theft. Moreover, at the time of confirmation, whether the event giving rise to the claim occurred at all was in dispute. Indeed, because Mrs. Leverett's criminal trial had not started at the time of confirmation, the event in question was presumed to not have occurred at all. The Court finds that the failure to disclose Mrs. Leverett's criminal indictment as a contingent claim is insufficient grounds to revoke confirmation.

There is also the question of whether Mrs. Leverett's criminal case is a lawsuit requiring disclosure on Debtors' Statement of Financial Affairs. Question 4 on the required Statement of Financial Affairs asks every debtor to list "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of [the] bankruptcy case." The Court recognizes that trustees and creditors look to lawsuits as a potential measure of whether additional money will be entering or leaving the estate during or after the bankruptcy. It is possible that the trustee and creditors would be interested in a potential criminal case involving theft due to the likelihood of court-ordered restitution. The Court also recognizes the tension debtors with pending criminal charges face when filing bankruptcy. Nothing in the Bankruptcy Code expressly prohibits the use of a debtor's schedules and statements as evidence against them

7

in a criminal case. 4 COLLIER ON BANKRUPTCY 521.08 (Alan R. Resnick and Henry J. Sommer, eds., 16th Ed. 2010) (internal citations omitted). It is therefore conceivable that debtors would be loath to make statements on financial affairs regarding a pending criminal case out of a desire to avoid those statements being construed against them in the criminal case. Considering the competing interests at hand, the Court does not make a determination as to whether Debtors were required to disclose Mrs. Leverett's criminal case as a lawsuit, because the Court's knowledge of the criminal case would not have changed the outcome of plan confirmation.

Although disclosing the criminal case might have been the more prudent option, the Court fails to see how disclosing these facts would have affected confirmation. The Court cannot, at the time of confirmation, speculate as to what a debtor might owe creditors in the future no more than it can speculate as to whether a debtor will maintain employment throughout the life of a Chapter 13 plan. The overly speculative nature of the potential restitution claim would have rendered the Court unable to deny confirmation on that basis, even if the potential claims had been disclosed. As with all Chapter 13 cases, if a new claim against the estate renders Debtors unable to perform under their confirmed plan, the Trustee can pursue its remedies at that time. The Court, however, finds Debtors' lack of disclosure of the pending criminal proceeding does not constitute fraud because the Trustee failed to show that disclosure would have affected confirmation.

B.    Payments to Criminal Defense Counsel

The Trustee further asserts that Debtors failed to disclose the fact that they had an agreement with Mrs. Leverett's defense counsel, Robert Callahan, and failed to disclose payments they made to him. The Trustee further claims Mr. Callahan has a claim against Debtors for $500, and that they failed to disclose the claim on their schedules. The Trustee

8

provided the contract with Mr. Callahan (Tr. Ex. 2), an accompanying promissory note (Tr. Ex. 3), and several checks and money orders used to pay Mr. Callahan (Tr. Ex. 4) to support these claims. At hearing, Debtors testified that they paid Mr. Callahan with income derived from social security, which is exempt from distribution to creditors and therefore is not required to be paid into a Chapter 13 plan. *See* 11 U.S.C. § 101(10A)(B) (excluding social security income from being included in a debtor's monthly income); *In re Ragos*, 700 F.3d 220 (5th Cir. 2012). Further, Mr. Callahan testified in court that, though Debtors allegedly owed him $500, he was not filing a claim against Debtors and was in fact not charging them the final $500 payment. The Trustee did not provide any evidence to refute either of these claims. The Court therefore finds that the disclosure of the payments to Mr. Callahan, the agreement between Debtors and Mr. Callahan, and his alleged claim against Debtors, would not have impacted the Court's decision to confirm Debtors' Plan, and therefore the failure to disclose these facts does not constitute fraud sufficient to revoke the confirmation of Debtors' Plan.

C.     Sale of Debtors' Boat

At the hearing, Debtors testified that they sold their boat to Mrs. Leverett's step-daughter in January of 2012 for an amount between $7500 and $8000.[4] Debtors did not disclose this sale as required on their Statement of Financial Affairs (Tr. Ex. 1).[5] The Trustee posited two general theories as to why this omission constitutes fraud. First, the Trustee argued that, had the sale of the boat been disclosed, it would have affected the liquidation analysis all Chapter 13 Debtors

---

[4] The discrepancy in sale price stems from conflicting testimony from Mrs. Leverett, who at one point testified that the sale price was $7,500, but then, through receipts offered by the Trustee, testified that her stepdaughter paid her $5,000 cash and then paid a bail bondsman $3,000 to get Mrs. Leverett out of jail after she was arrested on suspicion of theft.

[5] Question No. 10 on the Statement of Financial Affairs requires the debtor to list all property sold in the last two years, other than property sold in the ordinary course of business (Tr. Ex. 1).

9

must satisfy prior to confirmation.[6] Further, the Trustee argues that the sale of the boat to a family member of the Debtors could constitute a preference action. Neither issue argued by the Trustee meets the burden of proof to revoke confirmation.

First, the Trustee did not provide evidence to the Court as to exactly how the sale of the boat, had it been disclosed, would have affected the liquidation test, or the ability for the court to confirm Debtors' Plan. If the boat was non-exempt property, the result would still have been the same because the boat had already been sold at the time of filing bankruptcy. Trustee would only have a potential interest in the proceeds from the sale, which, based on the amount of money in Debtors' bank accounts, have presumably been spent. Further, in order for the Court to determine that a potential preference action would cause the Court to deny confirmation had it been disclosed, the Court would have to hear evidence that the sale of the boat was, in fact, a preference. Because the Court did not hear evidence on this issue, it requires too much speculation to determine that a potential preference claim should unwind confirmation. The Court finds the failure to disclose the sale of the boat does not meet the *Nikoloutsos* test for fraud.

D.    Bond Claim

Trustee's final point is that Debtor did not disclose a bond claim in the amount of $10,000 for insurance restitution. From testimony elicited at trial, the civic organization from which Mrs. Leverett allegedly took money is insured by Farmers Insurance. After the alleged theft, Farmers paid the organization $10,000 as part of a claim and then hired a collection agent to pursue restitution of the $10,000 claim from Mrs. Leverett (Tr. Ex. 7). When Debtors filed bankruptcy, they listed the claim on Schedule F (Unsecured, Nonpriority Claims), but rather than

---

[6] *See* 11 U.S.C. § 1325(a)(4) (West 2012) (requiring all Chapter 13 plans to pay creditors at least as much as they would be paid in a Chapter 7 case).

listing the $10,000 amount, Debtors listed the amount as "Notice Only," indicating that the amount of the claim had not been fixed (Tr. Ex. 1). Further, Debtors did not describe the nature of their claim, which the claim notice characterized as "insurance restitution" (Tr. Ex. 7). The Trustee argues that this restitution claim, had it been property listed on Debtors' Schedule F, would have alerted creditors and the Trustee to Mrs. Leverett's pending criminal case. The Trustee further claims that this $10,000 claim would have affected Debtors' ability to satisfy the liquidation test under Section 1325(a)(4). The Court does not see how this is the case, or how it would have affected confirmation at all. The collection agent for Farmers Insurance, Recovery Partners LLC, filed a proof of claim in the case for the amount of $10,000. The Court had knowledge of this claim and therefore failure for Debtors to disclose the claim on their schedules did not impact confirmation. Further, Debtors objected to the claim (ECF No. 8) and the Court granted the objection (ECF No. 17) after Recovery Partners did not file a response. The $10,000 insurance restitution claim was disallowed, and therefore has no effect on the administration of the estate. The Court finds that, while Debtors should have disclosed the amount and nature of Recovery Partners' claim, the failure to disclose did not result in confirmation of the plan, and therefore the Court cannot revoke confirmation due to the failure to disclose.

## Conclusion

The Court emphasizes that it does not condone Debtors' conduct in this case. Bankruptcy is designed to afford protection for the honest but unfortunate debtor, and anything but a complete account of all information required by the schedules and statements not only undermines Debtors' position as honest but unfortunate debtors, but also casts a pall on the legitimacy of the entire bankruptcy process. From the evidence presented, it appears Debtors failed to disclose key facts that the Trustee and other creditors have a right to review prior to

confirmation. The Court further notes that any of the omissions from Debtors' schedules and statements, had they been disclosed, would have alerted creditors and the Trustee to Mrs. Leverett's pending criminal case, which Debtors seemed determined to keep hidden from the Trustee. Further, the Court emphasizes the importance of filing corrected schedules and statements immediately upon the discovery of inaccurate information. It is troubling to the Court that, even after the discovery of several omissions in their original filing, Debtors have not filed corrected schedules and statements to date, despite indicating at the hearing that they would do so. The Court, however, is bound by the Bankruptcy Code and the standard articulated in *Nikoloutsos*. After a Chapter 13 plan has been confirmed, a trustee's recourse upon discovery of undisclosed information is limited. The facts in *Niokloutsos, Davis,* and *Thomas* made it abundantly clear that, had the facts in those cases been disclosed, confirmation would not have been possible. We do not have such clarity here. The onus is upon the Trustee to meet a high burden of proof to show that a debtor procured confirmation through fraud. Because the Trustee did not meet this burden of proof, the Court finds that the Trustee's Motion should be DENIED.

IT IS THEREFORE ORDERED that Trustee's Motion to Revoke Order Confirming Debtor's Chapter 13 Plan is hereby DENIED.

###